UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MICHAEL S. WARREN, and JACK S. WARREN,

Plaintiffs,

v.   4:11-cv-70

BANK OF AMERICA, and BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP,

Defendants.

## ORDER

### I. INTRODUCTION

Plaintiffs Michael S. Warren and Jack S. Warren ("Plaintiffs") filed a complaint in the Superior Court of Chatham County against Defendants Bank of America, N.A. and BAC Home Loans Servicing, LP ("Defendants"). *See* Doc. 1-2 at 5. Plaintiffs allege that Defendants violated various provisions of the Home Affordable Modification Program ("HAMP") in Count I. *See id.* at 6-8. In Count II, Plaintiffs allege that Defendants are not entitled to foreclose on Plaintiffs' property because Defendants violated various regulations promulgated under the National Housing Act ("NHA"). *See id.* at 8-10. "Count III" is a demand for declaratory or injunctive relief. *See id.* at 10-11. Defendants removed to this Court. *See* Doc. 1.

Defendants move to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted. *See* Doc. 5; FED. R. CIV. P. 12(b)(6).

A brief overview of the HAMP is necessary to understanding the facts of this case.

> During the economic crisis of 2008, Congress passed the Emergency Economic Stabilization Act of 2008 ("EESA"), to "immediately provide authority and facilities that the Secretary of the Treasury can use to restore liquidity and stability to the financial system of the United States." The statute directed the Secretary to implement a plan to minimize foreclosures. To that end, the Department of Treasury, in conjunction with other government institutions, created the Making Home Affordable Program. HAMP is a component of this initiative.

*Zoher v. Chase Home Fin.*, 2010 WL 4064798, at *2 (S.D. Fla. Oct. 15, 2010) (internal citation omitted) (quoting 12 U.S.C. § 5201 *et seq.*)

> The HAMP aims to financially assist three to four million homeowners who have defaulted on their mortgages or who are in imminent risk of default by reducing monthly payments to sustainable levels.
>
> The HAMP works by providing financial incentives to participating mortgage servicers to modify the terms of eligible loans.

*Marks v. Bank of Am., N.A.*, 2010 WL 2572988, at *5 (D. Ariz. June 22, 2010). To participate in HAMP, mortgagees enter into

contracts called Servicer Participation Agreements with the United States Department of the Treasury.[1] *See Zoher*, 2010 WL 4064798, at *1. "When considering modifications, participating servicers are obliged to abide by guidelines set forth by the Secretary of Treasury in the Home Affordable Modification Program Guidelines." *See id.* at *2 (citing U.S. Dep't of the Treasury Guidelines (Mar 4, 2009), *available at* http://rohrabacher.house.gov/UploadedFiles/modification_program_guidelines.pdf (last visited 5/23/11)).

## II. STANDARD OF REVIEW

In considering a Federal Rule of Civil Procedure 12(b)(6) motion, all facts in the plaintiff's complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint will not be dismissed so long as it contains factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (claim must have "facial plausibility"); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). However, contrary to Plaintiffs' argument, *see* Doc. 8 at 2-3, "*Twombly* retired the *Conley* no-set-of-facts test." *Ashcroft*, 129 S. Ct. at 1944.

## III. ANALYSIS

The parties' briefs are both exemplary works of legal writing. While Defendants lucidly make convincing arguments and highlight pertinent precedent for the Court, *see* Docs. 5, 9, Plaintiffs responded late with an almost incomprehensible defense of only half of their allegations, *see* Doc. 8.

Defendants filed their motion to dismiss on March 29, 2011. *See* Doc. 5. Local Rule 7.5 gives parties fourteen (14) days to respond. Plaintiffs filed their response twenty-three (23) days after Defendants filed their motion. *See* Doc. 8. "Failure to respond within the applicable time period shall indicate that there is no opposition to a motion." L.R. 7.5. Regarding Plaintiffs' NHA allegations, the Court need not rely on the Local Rules' presumption alone. Plaintiffs' belated response failed to address any of Defendants' arguments regarding Plaintiffs' NHA claims. *See* Doc. 8.

### A. Plaintiffs Cannot Enforce Any Alleged Violation of HAMP Guidelines

In Count I, Plaintiffs allege that Defendants violated various provisions of HAMP. Plaintiffs lack standing to assert this claim as a breach of contract action and HAMP created neither an express nor implied private right of enforcement.

#### 1. Plaintiffs lack standing to state a breach of contract claim

Plaintiffs attempt to enforce the HAMP Agreements between Defendants and the United States Department of Treasury as a third-party beneficiary. *See* Doc. 1-2 at 6-8. *But see* Doc. 8 (Plaintiffs argue on page 6

---

[1] Defendants' Servicer Participation Agreements ("HAMP Agreements") are *available at*: http://www.treasury.gov/initiatives/financial-stability/housing-programs/mha/Pages/default.aspx (follow "Contracts & Agreements" hyperlink; then follow each Defendant's hyperlink)

that "Defendant [sic] is not arguing a 3rd party beneficiary status to HAMP," but then expend two pages arguing Congress intended HAMP to benefit them).

Plaintiffs referenced general HAMP agreements in their complaint, but failed to attach copies of the Defendants' contracts. *See* Doc. 1-2 at 7. Ordinarily this might require the Court to ignore such contracts in ruling on Defendants' motion to dismiss. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). But the Court takes judicial notice of the Defendants' HAMP Agreements' terms because they are publicly available and their contents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* FED. R. EVID. 201; *Cnty. of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005). Therefore, the Court may consider these contracts without treating Defendants' motion as one for summary judgment. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n.2 (11th Cir. 2006) (considering matters outside the pleadings without converting motion to summary judgment where documents were public records).

"The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law." *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007) (citing *Miree v. DeKalb Cnty.*, 433 U.S. 25, 28 (1977)).

Under Georgia law, a third party beneficiary only has standing if it clearly appears from the contract that it was intended for his benefit. *See Danjor, Inc. v. Corp. Constr., Inc.*, 272 Ga. App. 695, 697 (2005).

> The mere fact that he would benefit incidentally from performance of the agreement is not alone sufficient. There must be a promise by the promisor to the promisee to render some performance to a third person, and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary.

*Id.* (quoting *Rowe v. Akin & Flanders, Inc.*, 240 Ga. App. 766, 768 (1999)). Generally, "government contracts that benefit members of the public are assumed to create incidental beneficiaries 'absent a clear intent to the contrary.'" *Zoher v. Chase Home Fin.*, 2010 WL 4064798, at *5 (S.D. Fla. Oct. 15, 2010) (quoting *Marks v. Bank of Am., N.A.*, 2010 WL 2572988, at *3 (D. Ariz. June 22, 2010)); *see also Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 361-62 (5th Cir. 1977) (finding that a mortgagor was "at most" an incidental third party beneficiary of a contract between the government and mortgagees); RESTATEMENT (SECOND) OF CONTRACTS § 313 cmt. a ("government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested").

Every court that has examined whether Congress intended to endow mortgagors with third party beneficiary rights to enforce HAMP has held it did not. *See, e.g., Villa v. Wells Fargo Bank, N.A.*, 2010 WL 935680,

3

at *2-3 (S.D. Cal. Mar. 15, 2010); *Marks*, 2010 WL 2572988, at *2; *Hoffman v. Bank of Am., N.A.*, 2010 WL 2635773, at *3-4 (N.D. Cal. June 30, 2010). *But see Reyes v. Saxon Mortg. Servs., Inc.*, 2009 WL 3738177, at * (S.D. Cal. Nov. 5, 2009) (finding third party beneficiary rights in 2009, but the same judge has since reversed course and held that mortgagors lack standing to enforce the HAMP, *see Villa*, 2010 WL 935680, at *7).

The HAMP Agreements do not disclose any clear intent to make all mortgagors intended beneficiaries. Therefore, Plaintiffs are mere incidental beneficiaries and lack standing to enforce the HAMP Agreements on a breach of contract theory.

### 2. No private right of action exists under HAMP

"HAMP does not expressly create a cause of action." *Zoher*, 2010 WL 4064798, at *3. Instead, Congress delegated enforcement authority to Freddie Mac. *See Marks*, 2010 WL 2572988, at *6 (citing U.S. Dep't of Treasury, Supplemental Directive 2009-08, at 4 (Nov. 3, 2009), *available at* https://www.hmpadmin.com/portal/news/docs/2009/hampupdate110309a.pdf (last visited 5/23/11)).

> The HAMP requires mortgagees to collect, retain, and transmit mortgagor and property data to Freddie Mac in order to ensure compliance with the program. As the compliance officer, Freddie Mac is charged with conducting independent compliance assessments including evaluation of documented evidence to confirm adherence . . . to HAMP requirements such as the evaluation of borrower eligibility.

*Id.* (citing Supplemental Directive 2009-01, at 13-14, 19-21, 25-26 (Apr. 6, 2009), *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf; Supplemental Directive 2009-06 (Sept. 11, 2009) (last visited 5/23/11), *available at* https://www.hmpadmin.com/portal/news/docs/2009/hampupdate091109.pdf) (last visited 5/23/11) (internal citation and quotation omitted).

Congress's delegation of compliance authority to Freddie Mac undermines any argument that it also intended to deputize mortgagors as private attorneys general to enforce the HAMP. *See Marks*, 2010 WL 2572988, at *6.

"[T]here is [also] no implied right of action under HAMP." *Zoher*, 2010 WL 4064798, at *3.

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in

an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78 (1975) (internal quotation and citation omitted). *But see Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 23-24 (1979) (holding that all four factors are not entitled to equal weight and that "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action").

There is no implied right of action to enforce EESA or HAMP. First, "EESA was not passed for the 'especial benefit' of homeowners at risk of foreclosure; rather, the statute was designed to 'address large-scale economic phenomena affecting not only [distressed] homeowners, but also financial institutions and homeowners at large.'" *Zoher,* 2010 WL 4064798, at *3 (quoting *Marks,* 2010 WL 2572988, at *6). "The economic stimulus effort attempts to promote the welfare of foreclosure parties generally, but it does not connote the power to delay foreclosure." *Marks,* 2010 WL 2572988, at *6.

"Second, there was no legislative intent to create a cause of action." *Zoher,* 2010 WL 4064798, at *3. "[L]egislative history indicates that the right to initiate a cause of action lies with the Secretary via the Administrative Procedure Act." *Marks,* 2010 WL 2572988, at *7. Further, Congress's delegation of exclusive enforcement authority to Freddie Mac belies any intent to allow such an implied cause of action. *See id.* at *6. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval,* 532 U.S. 275, 290 (2001).

"Next, [Plaintiffs'] proposed cause of action would not further the underlying legislative scheme." *Marks,* 2010 WL 2572988, at *7.

> Finding an implied private right of action for mortgagors would discourage servicers from participating in the program because they would be exposed to significant litigation expenses. Moreover, by creating a compliance vehicle through Freddie Mac and by including reporting requirements, "the HAMP Guidelines already designated a scheme to correct [] any mortgagee wrongdoing."

*Zoher,* 2010 WL 4064798, at *4 (quoting *Marks,* 2010 WL 2572988, at *7).

"Finally, controversies involving real property and contract claims are generally relegated to state law." *Id.* (internal quotation omitted); *see also Roberts v. Cameron-Brown Co.,* 556 F.2d 356, 361-62 (5th Cir. 1977) ("[M]ortgage foreclosure has traditionally been a matter for state courts and state law.").

Neither EESA nor HAMP provide a private cause of action. Defendants' motion to dismiss, *see* Doc. 5, is **GRANTED** with respect to Count I.

### B. Plaintiffs failed to sufficiently allege a violation of the NHA

It is also doubtful that a private right of action exists for individual mortgagors to

5

enforce NHA regulations. *See, e.g., Roberts* at 361 ("No evidence exists demonstrating that Congress intended to create a private cause of action under the National Housing Act."); *see also Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 758-59 (5th Cir. 1987) ("Our examination of the *Cort* factors leads us to conclude that no private cause of action can be implied from the National Housing Act."); *Moses v. Banco Mortg. Co.*, 778 F.2d 267, 272 n.2 (5th Cir. 1985) (holding that no implied private right of action exists under the NHA and noting that "[t]he District of Columbia, First, Sixth and Ninth Circuits have held that the Housing Act and regulations promulgated thereunder do not satisfy the four-part *Cort* test, and thus have refused to create a right of action for private parties who wish to sue to enforce the statute or regulations promulgated thereunder") (citations omitted).

Some courts have, however, allowed plaintiffs to assert non-compliance with NHA regulations as an affirmative defense to foreclosure. *See, e.g., Wells Fargo Home Mortg., Inc. v. Neal*, 922 A.2d 538, 551 (Md. 2007); *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853, 864 (Ind. Ct. App. 2010). Georgia courts have yet to rule on the issue.

But the Court need not reach either of these issues because Plaintiffs have failed to sufficiently plead this Count. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Federal Rule of Civil Procedure Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

Plaintiffs' complaint includes only two specific factual allegations: (1) Plaintiffs received a letter dated December 29, 2010, by which the Defendants notified Plaintiffs of their intent to foreclose; and (2) a foreclosure sale was set for February 1, 2011. *See* Doc. 1-2 at 6. Plaintiffs do not allege a property address, a loan number, a loan agreement, that a foreclosure occurred, or any specific facts indicating how Defendants violated NHA regulations. *See* Doc. 1-2 at 5-11.

Plaintiffs complaint does not "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Defendants' motion to dismiss, *see* Doc. 5, is **GRANTED** with respect to Count II.

### C. Plaintiffs' Prayers for Declaratory or Injunctive Relief are Dismissed

Plaintiffs separately plead their prayers for relief as "Count III." Because Plaintiffs failed to sufficiently plead the substance of any claim against Defendants, they are not entitled to any type of relief. "Count III" is **DISMISSED**.

6

## IV. CONCLUSION

Defendants' motion to dismiss, *see* Doc. 5, is *GRANTED*. Plaintiffs' case is *DISMISSED*.

This 24th day of May 2011.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA